FreeRepublic.com "A Conservative News Forum"

[ Last | Latest Posts | Latest Articles | Self Search | Add Bookmark | Post | Abuse | Help! ]

Disclaimer: Opinions posted on Free Republic are those of the individual posters and do not necessarily represent the opinion of Free Republic or its management. All materials posted herein are protected by copyright law and the exemption for fair use of copyrighted works.

# Gen. Ashcroft's Letter to the NRA

Constitution/Conservatism Front Page Miscellaneous Keywords: ASHCROFT LETTER, NRA, SECOND AMENDMENT
Source: **American Rifleman Magazine**
Published: **August, 2001** Author: **John Ashcroft**
Posted on **07/16/2001 15:57:38 PDT** by VenoMachine

## Office of the Attorney General
**Washington, D.C. 20530**

May 17, 2001

Mr James Jay Baker
Executive Director
National Rifle Association
Institute for Legislative Action
11250 Waples Mill Road
Fairfax, VA 22030

Dear Mr. Baker,

Thank you for your letter of April 10, 2001 regarding my views on the Second Amendment. While I cannot comment on any pending legislation, let me state unequivocally my view that the text and the original intent of the Second Amendment clearly protect the right of individuals to keep and bear firearms.

While some have argued that the Second Amendment guarantees only a "collective" right of the States to maintain militias, I believe the Amendment's plain meaning and original intent prove otherwise. Like the First and Fourth Amendments, the Second Amendment protects the rights of "the people," which the Supreme Court has noted is a term of art that should be interpreted consistently throughout the Bill of Rights. *United States v. Verdugo-Urquidez,* 494 U.S. 259, 265 (1990)(plurality opinion). Just as the First and Fourth Amendment secure individual rights of speech and security respectively, the Second Amendment protects an individual right to keep and bear arms. This view of the text comports with the all but unanimous understanding of the Founding Fathers. *See, e.g.,* Federalist No. 46 (Madison); Federalist No. 29 (Hamilton); *see also* Thomas Jefferson, Proposed Virginia Constitution, 1764 ("No free man shall ever be debarred the use of arms."); George Mason at Virginia's U.S. Constitution ratification convention 1788 ("I ask sir, what is the militia? It is the whole people... To disarm the people is the best and most effectual way to enslave them.").

This is not a novel position. In early decisions, the United States Supreme Court routinely indicated that the right protected by the Second Amendment applied to individuals. *See, e.g., Logan v. United States,* 144 U.S. 263, 276 (1892); *Miller v. Texas,* 153 U.S. 535, 538 (1893); *Robertson v. Baldwin,* 165 U.S. 275, 281-82 (1897); *Maxwell v. Dow* 176 U.S. 581, 597 (1900). Justice Story embraced the same view

in his influential *Commentaries* on the Constitution. *See* 3 J. Story, *Commentaries on the Constitution* ss 1890, p. 746 (1833). It is the view that was adopted by United States Attorney General Homer Cummings before Congress in testifying about the constitutionality of the first federal gun control statute, the National Firearms Act of 1934. *See* The National Firearms Act of 1934: Hearings on H.R. 9066 Before the House Comm. on Ways and Means, 73d Cong., 6, 13, 19 (1934). As recently as 1986, the United States Congress and President Ronald Reagan

Page 2, Letter to Mr. James J. Baker

explicitly adopted this view in the Firearms Owners' Protection Act. *See* Pub. L. No. 99-308, ss 1(b) (1986). Significantly, the individual rights view is embraced by the preponderance of legal scholarship on the subject, which I note, includes articles by academics on both ends of the political spectrum. *See e.g.,* William Van Alstynend *The Second Amendment and the Personal Right to Arms,* 43 Duke L.J. 1236 (1994); Akhil Reed Amar, *The Bill of Rights and the Fourteenth Amendment,* 101 Yale L.J. 1193 (1992); Sanford Levinson, *The Embarrasing Second Amendment,* 99 Yale L.J. 637 (1989); Don Kates, *Handgun Prohibition and the Original Meaning of th4e Second Amendment,* 82 Mich L. Rev. 204 (1983).

In light of this vast body of evidence, I believe that it is clear that the Constitution protects the private ownership of firearms for lawful purposes (1). As I was reminded during my confirmation hearing, some hold a different view and would, in effect, read the Second Amendment out of the Constitution. I must respectfully disagree with this view, for when I was sworn as the Attorney General of the United States, I took an oath to uphold and defend the Constitution. That responsibility applies to all parts of the Constitution, including the Second Amendment.

Thank you for your interest in this matter.

                                            Sincerely,

# The Bill of Rights, a Documentary History 675 (1971)(emphasis added)

Taken from <u>Printz v. U.S.</u>, 521 U.S. 898, 937-939 (1997).

## From Justice Clarence Thomas' concurring opinion:

(Note: in writing the below, Justice Thomas cited considerable precedent throughout. Those citations are omitted for clarity.)

The Court today properly holds that the Brady Act violates the Tenth Amendment in that it compels state law enforcement officers to "administer or enforce a federal regulatory program." Although I join the Court's opinion in full, I write separately to emphasize that the Tenth Amendment affirms the undeniable notion that under our Constitution, the Federal Government is one of enumerated, hence limited, powers. Accordingly, the Federal Government may act only where the Constitution authorizes it to do so.

In my "revisionist" view, the Federal Government's authority under the Commerce Clause, which merely allocates to Congress the power "to regulate Commerce . . . among the several states," does not extend to the regulation of wholly intrastate, point of sale transactions. Absent the underlying authority to regulate the intrastate transfer of firearms, Congress surely lacks the corollary power to impress state law enforcement officers into administering and enforcing such regulations. Although this Court has long interpreted the Constitution as ceding Congress extensive authority to regulate commerce (interstate or otherwise), I continue to believe that we must "temper our Commerce Clause jurisprudence" and return to an interpretation better rooted in the Clause's original understanding. Even if we construe Congress' authority to regulate interstate commerce to encompass those intrastate transactions that "substantially affect" interstate commerce, I question whether Congress can regulate the particular transactions at issue here. The Constitution, in addition to delegating certain enumerated powers to Congress, places whole areas outside the reach of Congress' regulatory authority. The First Amendment, for example, is fittingly celebrated for preventing Congress from "prohibiting the free exercise" of religion or "abridging the freedom of speech." The Second Amendment similarly appears to contain an express limitation on the government's authority. That Amendment provides: "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear arms, shall not be infringed." This Court has not had recent occasion to consider the nature of the substantive right safeguarded by the Second Amendment. If, however, the Second Amendment is read to confer a personal right to "keep and bear arms," a colorable argument exists that the Federal Government's regulatory scheme, at least as it pertains to the purely intrastate sale or possession of firearms, runs afoul of that Amendment's protections. As the parties did not raise this argument, however, we need not consider it here. Perhaps, at some future date, this Court will have the opportunity to determine whether Justice Story was correct when he wrote that the right to bear arms "has justly been considered, as the palladium of the liberties of a republic." In the meantime, I join the Court's opinion striking down the challenged provisions of the Brady Act as inconsistent with the Tenth Amendment.

<u>Printz v. U.S.</u>, 521 U.S. 898, 937-939 (1997).

EXHIBIT B