UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

WILLIAM J.R. EMBREY,

     Petitioner,

     vs.

GEORGE W. BUSH, et. al.,

     Respondents.

**Civil Action NO. 05-2022 (ACL)**

**PETITIONER'S ANSWER AND OBJECTIONS TO THE GOVERNMENT'S
REQUEST TO TRANSFER THIS CASE TO THE EIGHTH CIRCUIT
COURT OF APPEALS;  PURSUANT TO RULE 56, FED.R.CIV.P.,
PETITIONER MOVES THE COURT FOR SUMMARY JUDGMENT ON ALL
LEGAL CLAIMS MADE BY PETITIONER AGAINST EACH OF THE
RESPONDENTS**

The Government has requested the Court to transfer this
case to the Eighth Circuit Court of Appeals as a successive
28 U.S.C. § 2255 motion.

Petitioner, a <u>pro</u> <u>se</u> prisoner, **objects to the Government's
motion.**  Further, pursuant to Rule 56, Fed.R.Civ.P., Petitioner
moves the Court for summary judgment on all legal claims made
by him against each named Respondents.

On October 13, 2005, Petitioner filed his petition/complaint
against the named Respondents.  These Respondents all reside
in or have their offices in Washington, D.C., under the direct
jurisdiction of this Court. The petition/complaint requests
a specific remedy/redress to, and from each of the named Respondents.
See <u>Request for Relief</u> at pages 26-27 (a)-(h) of the petition/
complaint. <u>See</u> also Petitioner's motion pursuant to 28 U.S.C.
§ 2201 & § 2202 dated April 14, 2006.

The Eighth Circuit Court of Appeals does not have Jurisdiction

RECEIVED

APR 2 7 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

over the named Respondents, and it does not have jurisdiction under 28 U.S.C. § 2255 to render the relief requested by Petitioner in this case. See Petitioner's requested relief at pages 26-27 (a)-(h) in his petition/complaint. This relief cannot be granted under § 2255 (See 28 U.S.C. § 2255), and the Eighth Circuit Court of Appeals does not have jurisdiction over that requested relief.

The Government in its motion did not dispute the fact that this Court has jurisdiction over the Respondents in this case. Further, the Government did not dispute Petitioner's legal claims against each Respondent.

The Government's argument in its motion seems to be that the Court should transfer the case to the Eighth Curcuit Court of Appeals because Petitioner was sentenced in that circuit, and his petition/complaint should be viewed as a successive § 2255 motion. The legal claims and Supreme Court precedents Petitioner has placed before this Court have never been heard on the merits by any court.

The Government also claims that Petitioner has filed other petitions. See page 2 n.1, Government's motion. These petitions did not cover the issues and the Supreme Court precedents now before this Court. And, none of those petitions were every heard on the merits with an opinion rendered.

**THIS COURT HAS JURISDICTION OVER THE NAMED RESPONDENTS AND OVER THE LEGAL CLAIMS NOW BEFORE THE COURT**

The writ of habeas corpus can reach behind prison walls and iron bars. It is not now and never has been a static, narrow, formalistic remedy; its cope has grown to achieve its grand purpose-the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty. Jones v. Cunningham, 371 U.S. 236, 243 (1963).  A case arising under the Constitution or laws of the United States, is cognizable in the courts of the Union, whoever may be the parties to the case.  The Constitution gave to every person having a claim a right to submit his case to the court of the nation. However unimportant  his claim might be, however little the community might be interested in its decision, the Framers of our Constitution thought it necessary for the purposes of justice, to provide a tribunal as superior to influence as possible, in which that claim might be decided. Cohens v. Virginia, 19 U.S. 264, 383 (1821). See also, Ex Parte Milligan, 71 U.S. 2, 113 (1866); U.S. v. Lee, 106 U.S. 196, 220 (1882); Herrera c. Collins, 506 U.S. 390 (1993).

The writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action.  Its pre-eminent role is recognized by the admonition in the Constitution that: "The Privilege of the Writ of Habeas Corpus shall not be suspended . . . ." U.S. Const. Art. I, §9,

Cl. 2; Ex parte Royall, 117 U.S. 241, 249 (1886). The scope and flexibility of the writ - its capacity to reach all manner of illegal detention - its ability to cut through barriers of form and procedural maze - have always been emphasized and jealously guarded by courts and lawmakers. The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are sufaced and corrected. Harris v. Nelson, 394 U.S. 286, 291 (1969); Zeigler v. Wainwright, 805 F.2d 1422, 1426 (11th Cir. 1986). As Blackstone phased it, habeas corpus is "the great and efficacious writ, in all manner of illegal confinement."Harris, 394 U.S. at 291. As the Supreme Court said in Fay v. Noia, 372 U.S. 391, 401-402 (1963), the office of the writ is "to provide a prompt and efficiacious remedy for whatever society deems to be intolerable restrant." Harris, 394 U.S. at 291. See Peyton v. Rowe, 391 U.S. 54, 65-67 (1968).

    There is no higher duty of a court, under our Constitutional system, than the careful processing and adjudication of petitions for writs of habeas corpus, for it is in such proceedings that a person in custody charges that error, neglect, or evil purpose has resulted in his unlawful confinement and that he is deprived of his freedom contrary to law. Harris, 394 U.S. at 291. The Supreme Court has insistently said that the power of the federal courts to conduct inquiry in habeas corpus is equal to the responsibility which the writ involves: "The language of Congress, the history of the writ, the decisions of this Court, all make federal habeas corpus is plenary." Id. 394 U.S. at 291; Townsend

4

v. Sain, 372 U.S. 293, 312 (1963). See also Kuhlmann v. Wilson , 477 U.S. 436, 466 (1991).  The writ of habeas corpus plays a vital role in protecting constitutional rights. Slack v. McDaniel, 146 L.Ed.2d 542, 554 (2000).

The writ of habeas corpus is a procedural device for subjecting executive, judicial or private restraint on liberty to judicial scrutiny. It is assured among other things that the prisoner may require his jailer to justify the detention under law. Payton, 391 U.S. at 58-60. The purpose of writ of habeas corpus is the prisoner will have the opportunity to challenge defective convictions and obtain relief without having to spend unwarranted months or years in prison. Id. 391 U.S. at 65.

This Court is bound to obey and to support the Constitution of the United States. Cohens, 19 U.S. at 344; Lee, 106 U.S. at 220. See also Marbury v. Madison, 5 U.S. 137, 176, 180 (1803).

## THE GOVERNMENT DUCKED THE REAL ISSUES
## THAT OF GOVERNMENT MISUSE OF POWER

The Government at page 4 of its motion, claims Petitioner is challenging the legality of his sentence. The Government missed the ball park.

Petitioner's legal claims is about Congress' abuse of power and its unlawful use of the Commerce Clause, and the President, government prosecutors and judges "cover up" of those illegal acts by refusing to face, and to address this fact.

### THE FEDERAL GOVERNMENT ABUSED ITS POWER AND
### UNLAWFULLY USED THE COMMERCE CLAUSE

The then members of Congress, the President, and the Attorney General of the United States, in the face of clear Supreme Court precedents, unlawfully used the Commerce Clause of the Constitution to illegally disarm America Citizens, and to further, with the assistance of Government prosecutors and judges, unlawfully imprisoned the  Citizens who stood on their rights, and refused to disarm. In the past and today, the Government has imprisoned thousands of Citizens, including Petitioner, when clear Supreme Court precedents and the Constitution clearly forbids such imprisonment.

The today members of Congress, the President and the Attorney General for the United States, and judges all have failed in their duty to correct this misuse of power, and to correct this injustice that has been inflicted upon the American Citizens by the Federal Government.

6

**CONGRESS IS FORBIDDEN TO EXERT THE COMMERCE CLAUSE AS ITS POWER TO DISARM AMERICAN CITIZENS, AND TO IMPRISON THOSE CITIZENS WHO DISOBEY THAT GOVERNMENT LAW**

It is the Federal government's claim that because a legal firearm lawfully crossed a state line perhaps 50 to 100 years ago, the Commerce Clause now grants it power to prohibit American Citizens such as Petitioner, to possess that legal firearm for home, family, and self protections, and for lawful hunting, and other legal purposes. And, further, to imprison him, or any other American Citizen who disobeys that government law.

The Constitution of the United States does not contemplate that federal regulatory power should tag along after goods shipped in interstate like a hungry dog. See U.S. v. Morgan, 230 F.3d 1067, 1074 (8th Cir. 2000). See also Printz v. U.S., 521 U.S. 898, 937-939 (1997); U.S. v. Lopez, 131 L.Ed.2d 626, 654 (1995).

Article I, of our Constitution contains numerous explicit limited grants of power to Congress. But, none of these limited powers remotely concerns federal criminal penalties for Amercian Citizens who do nothing more than possess an item that is per se legal, that has ~~lawfully~~ been shipped interstate, received at its destination by the lawful recipient, company, or store; and thereafter, sold, intrastate, to a party who, perhaps 50 years later, sells that item, intrastate, to a neighbor, with all transactions of said item being lawful. See e.g. Morgan, 230 F.3d at 1074; Printz, 521 U.S. at 937-939; Lopez, 131 L.Ed.2d at 654. It would appear that the federal government's dominion,

7

jurisdiction, and/or authority, over that item terminated once it had been legally received by the lawful recipient, company or store. See Morgan, 230 F.3d at 1074; Printz, 521 U.S. at 937-939; Lopez, 131 L.Ed.2d at 654.

### AMERICAN CITIZENS' RIGHTS LIMITS THE COMMERCE CLAUSE

Amercain Citizens' undeniable rights, the first ten Amendments, and other provisions of the Constitution limits Congress' Commerce Clause powers. See Robertson v. Balwin, 165 U.S. 275, 293-94 (1897). See also Downes v. Bidwell, 182 U.S. 244, 281, 292, 295 (1901); Morgan, 230 F.3d at 1074.

Congress may enact regulations for the conduct of commerce among the several States, and may perhaps, proscribe punishment for the violation of such regulation. But, it may not, in so doing, ignore other clauses of the Constitution. Robertson, 165 U.S. at 293-94. See also Downes, 182 U.S. at 281, 292, 295. Congress cannot exert power under the Commerce Clause except with due regard to other provision of the Constitution. Robertson, 165 U.S. at 293. See also Downes, 182 U.S. at 218. Particularly, those positive prohibitions enumerated in the body of the first ten Amendments, and the fundamental guarantees of life, liberty, and property. Robertson, 165 U.S. at 281-82, 293, 294; Downes, 182 U.S. at 269, 281-83, 295. For instance a regulation by Congress under the Commerce Clause cannot be sustained when it is in disreguard of the expressed injunctions of the Constitution and/or Supreme Court precedents. Robertson, 165 U.S. at 281, 293-94, 297. See also Downes, 182 U.S. at 281-283, 292, 294-95.

In this instant case, these injunctions are, but not limited

8

to, "Congress cannot deny to the people the right to keep and
bear Arms." Scott v. Sandford, 60 U.S. 393, 450 (1856).  In
Bach v. Pataki , 408 F.3d 75 (2nd Cir. 2005), the Bach Court
interpreted Chief Justice Taney's decision in Scott v. Sandford,
60 U.S. 393 (1857), concerning citizens' rights "to keep and
carry Arms wherever they went,"(60 U.S. at 417), to mean a "right"
of the citizen and citizenship of Americans. 408 F.3d at 90-
91.

   "The Constitution provides, . . . that no 'person's' right
to keep and bear Arms shall be infringed." Ex parte Milligan,
71 U.S. 2, 103-104 (1866).  "The right of the people to keep
and bear Arms." Robertson, 165 U.S. at 282.  "Congress shall
never disarm any Citizen unless such as are or have been in
Actual Rebellion." 2 **Documentary History of the Constitution
of the United States, 1787-1870 at 143 (1894);** U.S. v. Emerson,
270 F.3d 203, 229-233 (5th Cir. 2001), cert. denied, 122 S.Ct.
2362 (2002).  "The Second Amendment in the Bill of Rights
specifically guarantees the people the right to keep and bear
Arms." Laird v. Tatum, 92 C.St. 2318, 2330 (1972). See also
Bach, 408 F.3d at 90-91; Scott, 60 U.S. at 417, 450; Robertson,
165 U.S. at 282; Milligan, 71 U.S. at 103-104.  The right to
keep and bear Arms of the Second Amendment, are **personal rights**
guaranteed by the Constitution. Duncan v. Louisiana, 319 U.S.
145, 166-167 (1968); Albright v. Oliver, 510 U.S. 266, 306 (1994);
Malloy v. Hogan, 378 U.S. 1, 4-5, 22 (1964); Emerson, 270 F.3d
at 263; Bach, 408 F.3d at 90-91; Robertson, 165 U.S. at 281-
282.

"The Second Amendment declares that it shall not be infringed; this means that it shall not be infringed by Congress. this is one of the Amendments that has no other effect than to resrtict the power of the National government . . .." <u>U.S. v. Cruikshank</u>, 92 U.S. 542, 551-553 (1875); <u>Presser v. Illinois</u>, 116 U.S. 252, 264-265 (1886); <u>Maxwell v. Dow</u>, 176 U.S. 581, 597 (1900); <u>Miller v. Texas</u>, 153 U.S. 535, 538 (1894).  The Second Amendment's "right to keep and bear Arms" imposes a limitation on . . . federal . . . legislative efforts. <u>Bach</u>, 408 F.3d at 84.  "the only function of the Second Amendment [is] to prevent the federal government . . . from infringing that right." <u>Cases v. U.S.</u>, 131 F.2d 916, 921 (1st Cir. 1942).

### CITIZENS HAVE A RIGHT TO ENGAGE IN INTERSTATE COMMERCE

The Fifth Amendment, and Article I, § 8, Clause 3 (the Commerce Clause) guarantees every citizen of the United States a substainal "right" to engage in interstate trade, such as purchasing food, house hold goods, clothing, oil, gas, cars, and all other lawful merchandise, including firearms, all which have been legally shipped in interstate commerce. <u>See</u> <u>Crutcher v. Kentucky</u>, 141 U.S. 47, 57 (1891); <u>Dennis v. Higgins</u>, 498 U.S. 439, 448 (1991). <u>See</u> <u>also</u> <u>Lopez</u>, 131 L.Ed.2d at 654; <u>Printz</u>, 521 U.S. at 937-939. And, the people of each State shall have free ingress and egress to and from any other States, and shall enjoy therein all the privileges of trade and commerce. <u>Maxwell</u>, 176 U.S. at 588.

10

Long before the Constitution of the United States, the American people (We the People) had many unalienable and natural rights we had inherited from our English ancestors. See Robertson, 165 U.S. at 281-282; Cruikshank, 92 U.S. at 551-554; Downes, 182 U.S. at 282-283.  These rights are, but not limited to; Freedom of religious opinions, freedom of speech, and of the press, free access to the courts, **"the right to bear arms for a lawful purpose"** (Cruikshank, 92 U.S. at 553), **"the right of the people to keep and bear arms"** (Robertson, 165 U.S. at 282), due process of law, to be free from unreasonable searches and seizures, and many other rights. See, Cruikshank, 92 U.S. at 551-554; Robertson, 165 U.S. at 281-282; Downes, 182 U.S. at 282-283.  The Declaration of Independence and the Constitution of the United States and its first ten Amendments were intended to prohibit the National government to interfer with these natural and undeniable rights of the American people. Downes, 182 U.S. at 282-283, 288-289, 292, 294-96; Robertson , 165 U.S. at 281-282, 293, 294; Cruikshank, 92 U.S. at 551-54. Therefore, Congress, in legislating . . ., would be subject to those fundamental limitations in favor of personal rights which are formulated in the Constitution and its Amendments . . .. Downes, 182 U.S. at 269, 281-82, 288-89, 292, 294-95; Robertson, 165 U.S. at 293, 294, 296-97. No power can be exercised which are prohibited by the Constitution, or which are contrary to its spirit. Downes, 182 U.S. at 292, 295. What Congress does in excess of powers granted it, or in violation of the injunctions of the supreme law of the land, is a nullity, and may be so treated by every person. Robertson, 165 U.S. at 296. See also Article VI, Clauses 2 & 3.

For these above reasons and law, Congress is forbidden to exert the Commerce Clause as its power to disarm, and/or to imprison American Citizens for doing nothing more than possess an item that is per se lawful (a firearm) that perhaps 50 years ago was shipped across a state line, and now possessed for legal purposes. See Robertson, 165 U.S. at 281-82, 293; Downes, 182 U.S. at 269, 281-83, 295, 296-97.  Morgan, 230 F.3d at 1073-74. Therefore, Congress lacked the power under the Commerce Clause to enact 18 U.S.C. § 922 (g) (1).   Judicial efforts to render § 922 (g) (1) palatable cannot alter the Constitutional and Supreme Court precedents limitations on federal legislative power. No amount of creative drafting permits the judiciary to perserve a statute that Congress plainly lacked the power to create.   Congress may not pass laws unless it acts pursuant to Article VI, and an expressed grant of power in Article I of the Constitution. Morgan, 230 F.3d at 1073; McCulloch v. State, 17 U.S. 316, 416-417 (1819); Cohens v. Virginia, 19 U.S. 264, 426, 428 (1821); Marbury v. Madison, 5 U.S. 137, 176, 180 (1803); Article VI, Constitution of the United States.

As established above, Petitioner is in prison when the federal government was forbidden to even bring the indictment against him. And, when he had a right not to be haled into court.

**PRIOR TO THE CONSTITUTION OF THE UNITED STATES EACH AMERICAN HAD AN UNDENIABLE RIGHT TO KEEP AND BEAR ARMS U.S. v. CRUIKSHANK , 92 U.S. 542, 551-553 (1875), AND THE SECOND AMENDMENT FORBIDS CONGRESS TO INFRINGE UPON THAT RIGHT**

The Constitution of the United States declares: "A well regulated Militia being necessary to the security of a free state, the right of the people to keep and bear Arms, shall not be ingringed." **Second Amendment, Constitution of the United States.** The Supreme Court of the United States has held" "The Second Amendment declares that it shall not be infringed, but this means no more than that it shall not be infringed by Congress. This is one of the Amendments that has no other effect than to restrict the powers of the National government . . . ." U.S. v. Cruikshank , 92 U.S. 542, 551-553 (1875); Presser v. Illinois, 116 U.S. 252, 264-265 (1886) (same); Miller v. Texas, 153 U.S. 535, 538 (1894) (same); Maxwell v. Dow, 176 U.S. 581, 597 (1900) (same); Deprivation of Civil Rights, 20 L.Ed.2d 1454, 1464 (1964) (same). See also Quilici v. Village of Morton Grove, 695 F.2d 261, 269 (7th Cir. 1982), cert. denied, 464 U.S. 863 (1983) (same); Freson Rifle and Pistol Club, Inc. v. Van De Kamp, 965 F.2d 723, 729-731 (9th Cir. 1992) (same). The right to bear Arms for lawful purposes was held in Cruikshank, 92 U.S. at 553, Deprivation of Civil Rights, 20 L.Ed.2d at 1464.

"Congress shall never disarm any Citizen unless such as are or have been in Actual Rebellion." **Documentary History of the Constitution of the United States, 1787-1870 at 143 (1894)**; U.S. v. Emerson, 270 F.3d 203, 929-233 (5th Cir. 2001), cert.

denied, 122 S.Ct. 2362 (2002).  "Congress cannot deny to the
people the right to keep and bear Arms." Scott v. Sandford,
60 U.S. 393, 450 (1856).  "The Constitution give the people
the right to keep and carry Arms where-ever they go." Id. 60
U.S. at 417.  "The Constitution provides, . . . that no 'person's'
right to bear Arms shall be infringed.'" Ex parte Milligan,
71 U.S. 2, 103-104 (1866).  "The right of the people to keep
and bear Arms." Robertson v. Baldwin, 165 U.S. 275, 282 (1897);
Poe v. Ullman, 367 U.S. 497, 542-543 (1961) (same); Duncan v.
Louisiana, 391 U.S. 145, 166-170 (1968) (same); Moore v. East
Cleveland, 431 U.S. 494, 502 (1977) (same); Planned Parenthood
v. Casey, 505 U.S. 833, 848 (1992) (same).  "The Second Amendment
protects 'the right of the people to keep and bear Arms . .
.'" U.S. v. Verdugo-Urquidez, 494 U.S. 259, 265 (1990).

    In order to limit the powers of the federal government,
the first ten Amendments (including the Second Amendment) were
adpoted. They were intended as restraints and limitations upon
the powers of the federal government. Maxwell, 176 U.S. at 586-
587, 598; Cruiksank, 92 U.S. at 551-553; Robertson, 165 U.S.
at 281-282; Poe, 367 U.S. at 542-43; Downes v. Bidwell, 182
U.S. 244, 282, 283 (1901); Malloy v. Hogan, 378 U.S. 1, 4-5,
22 (1964).  The first eight Amendments (encluding the Second
Amendment) sets forth self-executing prohibitions on governmental
action, and the Supreme Court has primary authority to interpret
those prohibitions. City of Boerne v. Flores, 521 U.S. 507,
524 (1997).

The first eight Amendmdnts (including the Second Amendment) are personal and individual  rights belonging to each American. See  Malloy, 378 U.S. at 4-5, 22; Duncan, 391 U.S. at 166-170; Planned Parenthood, 505 U.S. at 847-848; Moore, 431 U.S. at 501-502; Poe, 367 U.S. at 541-543; Albright v. Oliver, 501 U.S. 266, 306 (1994); Dorr v. U.S., 195 U.S. 138, 146 (1904). See also, Emerson, 270 F.3d at 263.   The Second Amendment in the Bill of Rights specifically guarantees the people the right to keep and bear Arms. Laird v. Tatum, 92 S.Ct. 2318, 2330 (1972). See also  Scott, 60 U.S. at 417, 450; Milligan, 71 U.S. at 103-104; Robertson, 165 U.S. at 282; Verdugo-Urquidez, 494 U.S. at 265.

The privileges and immunities enumerated in the first ten Amendments (including the Second Amendment) belong to every Citizen of the United States. Maxwell, 176 U.S. at 608; Smith v. U.S., 423 U.S. 1303, 1307 (1975). And, these rights may not be denied simply because of hostility to their assertion or exercise. Cox v. louisiana, 397 U.S. 536, 551 (1965).   And, in legislating, Congress is subject to its limitations in favor of personal rights which are formulated in the Constitution and its Amendments. Downes, 182 U.S. at 268. See also Robertson, 165 at 181-182, 293.

It is a violation of the Due Process Clause of the Constitution any time the federal government deprives/prohibits any Citizen of the United States of or to keep and bear a legal firearm for the legal purpose of protecting her/his home, family and

self; or for hunting. See Malloy, 378 U.S. at 4-5, 22; Twining

v. New Jersey, 211 U.S. 78, 99; Duncan, 391 U.S. at 166-170;

Poe, 367 U.S. at 541-543; Moore, 431 U.S. at 501-502; Planned

Parenthood, 505 U.S. at 847-848.

## THE BILL OF RIGHTS (INCLUDING THE SECOND AMENDMENT) FORBIDS CONGRESS TO USE THE COMMERCE CLAUSE AS ITS AUTHORITY TO DEPRIVE AMERICANS OF FIREARMS

The Second Amendment and the Due Process Clause of our

Constitution forbids Congress to use Article I, § 8, Clause

3 (to regulate commerce . . . among the several States) of our

Constitution, to prohibit any American Citizen to keep and bear

a legal firearm. See Robertson, 165 U.S. at 293; Dorr, 195 U.S.

at 142; Downes, 182 U.S. at 281. See also Cruikshank, 92 U.S.

at 551-553; Presser, 116 U.S. at 264-265. While Congress may

enact regulations for the conduct of commerce among the several

States, and may prehaps, prescribe punishment for the violation

of such regulation, it may not, in so doing, ignore other clauses

of the Constitution. Robertson, 165 U.S. at 293-94. See also

Downes, 182 U.S. at 281-282, 292, 295.  The commerce power cannot

be exerted except with due regard to other provision of the

Constitution, Robertson, 165 U.S. at 293, particularly those

embodying the fundamental guarantees of life, liberty, and

property. Id. 165 U.S. at 293. See also  Maxwell, 176 U.S. at

588.  The expressed injunctions of the first eight Amendments

restrains Congress' use of the Commerce clause. Robertson, 165

U.S. at 293.  The Second Amendment prohibits Congress to infringe

upon the rights of the people to keep and bear Arms. Scott,

60 U.S. at 417, 450; <u>Milligan</u>, 71 U.S. at 103-104; <u>Robertson</u>,
165 U.S. at 282; <u>Verdugo-Urquidez</u>, 494 U.S. at 265; <u>Cruikshank</u>,
92 U.S. at 551-553; <u>Presser</u>, 116 U.S. at 264-265. <u>See</u> <u>also</u>
<u>Maxwell</u>, 176 U.S. at 588; <u>Crutchen v. Kentucky</u>, 141 U.S. 47,
57 (1891).

### LAWS OF CONGRESS MUST ME MADE IN PURSUANCE OF THE CONSTITUION

Congress may not pass laws unless it acts pursuant to an
expressed grant of power or authority in Article I of the Constitution.
<u>U.S. v. Morgan</u>, 230 F.3d 1067, 1073 (8th Cir. 2000). <u>See</u> <u>also</u>
**Article VI, Clauses 2 and 3, Constitution of the United States.**
Because the Second Amendment prohibits Congress to use the commerce
clause to enact 18 U.S.C. § 922 (g) (1), Congress cannot properly
link § 922 (g) (1) to any grant of congressional power in the
Constitution. Hence, Congress exceeded its proper authority
in enacting § 922 (g) (1); thus, the law is unconstitutional,
and void **ab initio**. <u>See</u> <u>Morgan</u>, 230 F.3d at 1073. <u>See</u> <u>also</u>
**Article VI, Clauses 2 and 3, Constitution of the United States.**

### PETITIONER HAD A RIGHT NOT TO BE HALED INTO COURT

Petitioner's right was "the right not to be haled into
court at all upon the possession of a firearm charge. The very
initiation of the proceedings against him . . . thus, operated
to deny him due process of law." <u>See</u> <u>U.S. v. Broce</u>, 488 U.S.
563, 575 (1989). "Where the government is precluded by the United
States Constitution from haling a defendant into court on a

charge, federal law requires that a conviction on that charge
be set aside even if the conviction was entered pursuant to
a counseled plea of guilty." Id. 488 U.S. at 575. See also
Menna v. New York, 423 U.S. 61, 62-63 (1975).

## 18 U.S.C. § 922 (g) (1) IS VOID AB INITIO

There is no plainer error than to allow a conviction to
stand under a statute which Congress was without power to enact.
In essence, the statute was void **ab initio**, and consequently,
the district court lacked subject matter jurisdiction with respect
to that charge. U.S. v. Walker, 59 F.3d 1196, 1198 (11th Cir.),
cert. denied, 116 S.Ct. 547 (1995).

It offends our systen of ordered liberty to permit a prisoner
to remain incarcerated when the statute under which he was
convicted exceeded Congress' lawmaking power to enact. Morgan,
230 F.3d at 1072. See also Brodenkircher v. Hays, 434 U.S.
357, 363 (1978).

### THE CONSTITUTION PROHIBITED PETITIONER'S INDICTMENT

As established above, the act upon which the indictment
against Petitioner is founded, is in conflict with the Constituion,
and therefore, the act and indictment  are void. See Bliss v.
Commonwealth, 12 Littell 90 (KY 1822).

### THIS COURT HAS A DUTY TO PRESERVE AND PROTECT THE SECOND AMENDMENT

Courts have a duty to preserve and protect the Bill of
Rights. Galloway v. U.S., 319 U.S. 372, 407 (1943).  The courts

of the United States have no higher duty than to exert its full authority to prevent all violations of the principles of the Constitution. <u>Downes</u>, 182 U.S. at 382; <u>Marbury v. Madison</u>, 5 U.S. 137, 174, 176-77, 180 (1803); <u>Cooper v. Aaron</u>, 358 U.S. 1, 18 (1958).

### THIS COURT MUST OBEY THE ABOVE CITED SUPREME COURT PRECEDENTS AS THE LAW OF THE LAND

Regardless of whether this Court agrees with the above cited Supreme Court precedents and the Supreme Court's analysis and interpertations of the Second Amendment, they are the Law of the Land, and this Court is bound by them. See <u>Quilici</u>, 695 F.2d at 270; <u>Early v. Packer</u>, 547 U.S. 3, 10-11 (2002); <u>U.S. v. Debeit</u>, 231 F.3d 797, 984 (5th Cir. 2000); <u>Marbury</u>, 5 U.S. at 180; <u>Cooper</u>, 358 U.S. at 18.

19

**THE SUPREME LAW OF THE LAND FORBIDS CONGRESS
TO USE THE COMMERCE CLAUSE TO DISARM UNITED
STATES CITIZENS:  THE CONSTITUTION AND SUPREME
COURT PRECEDENT FORBIDS CONGRESS TO DISARM
UNITED STATES CITIZENS:  CITIZENS ARE NOT
LEGALLY BOUND TO OBEY AN ACT OF CONGRESS THAT
IS INCONSISTANT WITH THE CONSTITUTION**

The Congress of the United States has enacted a federal law that created a "class of people" (thousands of them) within "the people" of the United States, and demanded that every one of these thousands in that "class" to disarm. See 18 U.S.C. § 922 (g) (1).  Congress denied each one of those thousands of United States Citizens a due process hearing to determine if that Citizen is actually a threat to her/himself, or to the community, or to the state or federal governments while possessing a legal firearm.  The fact is, that the majority of that "class" of Citizens are non-violent and Citizens who are an asset to their communities. And, some have never owned or possessed a firearm.  However, Congress has demanded federal imprisonment, up to life in some cases, for any person in that "class" who keeps a firearm for family, home and self protections and for hunting. And, for the protections of their state and the United States and its Constitutions.

In enacting this federal law, Congress and the President of the United States ignored clear Constitutional and Supreme Court precedent which **forbid** them to enact this unlawful federal law.

20

## THE FEDERAL GOVERNMENT IS CONFINED WITHIN
## THE CONSTITUTION OF THE UNITED STATES

The government of the United States was born of the Constitution, and all powers which it enjoys or may exercise must be either derived expressly or by implication from that instrument.  When an act of any department is challenged because it is not warranted by the Constitution, the existence of the authority is to be ascertained by determining whether the power has been conferred by the Constitution, either in express terms or by lawful implication. Every function of the government being thus derived from the Constitution, there is a limitation imposed on the authority, such restriction operates upon and confines every action on the subject within its constitutional limits. Dowens v. Bidwell, 182 U.S. 244, 289 (1901).

## GOVERNMENT OFFICIALS' PLEDGE TO THE CONSTITUTION

It is a great pledge given by every member of every department of the United States to support and defend the Constitution of the United States and its Amedments. Downes, 182 U.S. at 344; Article VI, Constitution of the United States.

Every Senator and Representative is bound, by Oath or Affirmation, to regard the Constitution as the supreme Law of the Land. Downes, 182 U.S. at 382; Article VI, Constitution of the United States.

## CONGRESS MUST PROTECT AND COMPLY WITH THE BILL
## RIGHTS

The principles of the Constitution are obligatory upon Congress, and Congress has a high duty to regard those great

principles enumerated in the Bill of Rights, the first ten
Amendments, of our Constitution. Downes, 182 U.S. at 296-299,
319-320, 381.

### COURTS SHOULD IGNORE ARGUMENTS OF LEGISLATORS

The arguments of individual legislators are no proper subject
for judicial comment. They are so often influenced by personal
or political considerations, or by the assumed necessities of
the situation, that they can hardly be considered even as the
deliberate views of the persons who make them, much less as
dictating the construction to be put upon the Constitution by
the courts. U.S. v. Union P.R. Co., 91 U.S. 72, 79; Downes,
182 U.S. at 254.

### THE PROHIBITORY CLAUSES OF THE CONSTITUTION ARE MANY

The prohibitory clauses of the Constitution are many, and
no powers by Congress can be exercised which are prohibited
by the Constitution, or which are contrary to its spirit. Downes,
182 U.S. at 360, 381. See also the first ten Amendments and
Article I, § 8, of our Constitution.

### CONGRESS MUST ATTACH ITS LAWS TO A CLAUSE OF ARTICLE I, § 8, WHICH CLEARLY AUTHORIZES THAT LAW

The authority for the exercise of power by Congress of
the United States must be found in the Constitution. Whatever
it does in excess of the powers granted to it, or in violation
of the injunctions of the supreme law of the land, is a nullity,

and may be so treated by every person. <u>Robertson v. Baldwin</u>,

165 U.S. 275, 296 (1897).  In this Country, the will of the

people, as expressed in the fundamental law, must be the will

of the courts and legislatures.  No court is bound to enforce,

nor is any one legally bound to obey, an act of Congress  that

is inconsistent with the Constitution. Id. 165 U.S. at 297.

No powers can be exercised by Congress which are prohibited

by the Constitution, or which are contrary to its spirit. These

limits in the express prohibitions on Congress forbids it to

do certain things; that in the exercise of the legislative

powers, Congress cannot pass an ex post facto law or bill of

attainder; and so in respect to each of the other prohibitions

contained in the Constitution such as the Bill of Rights, the

first ten Amendments. <u>See</u> <u>Downes</u>, 182 U.S. at 292, 295, 381.

### THE RIGHTS SET FORTH IN THE FIRST TEN AMENDMENTS ARE INHERITED FROM OUR ENGLISH ANCESTORS

It is perfectly well settled that the first ten Amendments

to the Constitution, commonly known as the "Bill of Rights,"

were not intended to lay down any novel principles of government,

by simply embodying certain guarantees and immunities which

we (the people) had inherited from our English ancestors. One

being the right of the people to keep and bear arms (Second

Amendment). <u>Robertson</u>, 165 U.S. at 281-282.

### THE FIRST TEN AMENDMENTS ARE POSITIVE PROHIBITIONS AGAINST THE FEDERAL GOVERNMENT AND ITS AGENTS

The Bill of Rights, the first ten Amendments to the

Constitution are not mere regulations, but are an absolute denial
of all authority under any circumstances or conditions to do
particular acts.  In the nature of things, limitations of the
character cannot be under any circustances transceded, because
of the complete absence of power. These positive prohibitions
of the Constitution with-holds all powers from Congress on a
particular subject in the Bill of Rights. See Downes, 182 U.S.
at 295-296, 381.

There is a distinction between certain natural rights
enforced in the Constitution by prohibitions against interference
with them, and what may be termed artificial or remendial rights
which are peculiar to our own system of jurisprudence. Of the
former class are the rights enumerated in the Bill of Rights,
the first ten Amendments of our Constitution. See Downes, 182
U.S. at 282.

### CONGRESS MUST RESPECT PERSONAL RIGHTS

Congress, in legislating, is subject to its limitations
in favor of personal rights which are formulated in the Constitution
and its Amendments. Downes, 182 U.S. at 268.

### CONGRESS HAS NO POWER UNLESS CLEARLY
### AUTHORIZED BY THE CONSTITUION

It is settled that the Constitution of the United States
is the only source of power authorizing action by any branch
of the Federal government. "The government of the United States
was born of the Constitution, and all powers which it enjoys

24

or may exercise must either derive  expressly or by implication
from that instrument." <u>Dorr v U.S.</u>, 195 U.S. 138, 140 (1904);
<u>Downes</u>, 182 U.S. at 289

### CONGRESS MAY NOT DISARM CITIZENS OF THE UNITED STATES

> "A well regulated militia, being necessary to the
> security of a free state, the right of the people
> to keep and bear arms, shall not be infringed."

**Second Amendment to the Constitution of the United States.**

"The Second Amendment declares that it shall not be infringed;
this means that it shall not be infringed by Congress. This
is one of the Amendments that has no other effect then to restrict
the power of the national government." <u>U.S. v. Cruikshank</u> ,
92 U.S. 542, 553 (1875); <u>Presser v. Illinois</u>, 116 U.S. 252,
264-265 (1886) (same); <u>Maxwell v. Dow</u>, 176 U.S. 581, 597 (1900)
(same); <u>Freson Rifle and Pistol Club, Inc. v. Van De Kamp</u>, 965
F.2d 723, 729-31 (9th Cir. 1992)(same); <u>Quilici v. Village of
Morton Grove</u>, 695 F.2d 261, 296 (7th Cir. 1982), cert. denied,
464 U.S. 863 (1983)(same). See also <u>Miller v. Texas</u>, 153 U.S.
535, 538 (1894). "The Constitution provides, . . . that no
'person's' right to bear arms shall be infringed.'" <u>Ex parte
Milligan,</u> 71 U.S. 2, 103-104 (1866). "The right of the people
to keep and bear arms." <u>Robertson v. Baldwin,</u> 165 U.S. 275,
282 (1897).  "Congress cannot deny to the people the right to
keep and bear arms." <u>Scott v. Sandford</u>, 60 U.S. 393, 450 (1856).
"The Constitution gives the people the right to keep and carry
arms where-ever they go." Id. 60 U.S. at 417.

"Congress shall never disarm any Citizen unless such as
are or have been in Actual Rebellion." **2 Documentary History
of the Constitution of the United States, 1787-1870 at 143 (1894)**;
U.S. v. Emerson, 46 F.Supp. 2d 598, 606 (N.D. Tex. 1999); U.S.
v. Emerson, 270 F.3d 203, 229-233 (5th Cir. 2001), cert. denied,
122 S.Ct. 2362 (2002).

In order to limit the powers of the federal government,
the first ten Amendments were adopted. They were intended as
restraints and limitation upon the powers of the  federal
government. Maxwell, 176 U.S. at 586-587, 598; Spies v. Illinois,
123 U.S. 131, 166; Poe v. Ullman, 367 U.S. 497, 542-43 (1961);
City of Boerne v. Flores, 521 U.S. 507, 524 (1997); Robertson,
165 U.S. at 281-282; Downes, 182 U.S. at 295-296, 282. The Second
Amendment, the right to keep and bear arms, is included in the
first ten Amendments. U.S. v. Verdugo-Urquidez, 494 U.S. 259,
265 (1990).  The privileges and immunities enumerated in the
first ten Amendments belong to every Citizen of the United States.
Maxwell, 176 U.S. at 608.  The first eight Amendments are personal
rights safeguarded against national action, because a denial
of these rights would be a denial of due process of law. See
Malloy v. Hogan, 378 U.S. 1, 4-5, 22  (1964); Twining v. New
Jersey, 211 U.S. 78, 99.  The Second Amendment in the Bill of
Rights specifically guarantees the people the right to keep
and bear arms. Laird v. Tatum, 92 S.Ct. 2318, 2330 (1972);
Robertson , 165 U.S. at 282; Scott, 60 U.S. at 450; Milligan,

71 U.S. at 103-104. The first eight Amendments, including the Second Amendment, are **personal rights** guaranteed by the Constitution of the United States. See Duncan v. Louisiana, 391 U.S. 145, 166-167 (1968); Albright v. Oliver, 510 U.S. 266, 306 (1994); Malloy, 378 U.S. at 4-5, 22; Twining, 211 U.S. at 99. See also Maxwell, 176 U.S. at 608; Robertson, 165 U.S. at 281-282. Personal rights are forumlated in the Constitution and its Amendments. Dorr, 195 U.S. at 146; Maxwell, 176 U.S. at 586-589.

When the Constitution speaks of or refers to "the people," it means all the people of the United States. Downes, 182 U.S. at 250, 377-378; McCulloch v. Maryland, 4 Wheat. 316, 403-406. The words "the people," as used in the Constitution, including the Second Amendment, refers to individual Americans. Emerson, 270 F.3d at 229; Verdugo-Urquidez, 494 U.S. at 265. The phase "bear arms" in the Second Amendment refers generally to the carrying or wearing of arms. Emerson, 270 F.3d at 231; Muscarello v. U.S., 524 U.S. 125, 143 (1998); Scott, 60 U.S. at 417.

The Second Amendment protects the right of individuals to privately keep and bear their own firearms that are suitable as individual, personal weapons. Emerson, 270 F.3d at 263. See also Verdugo-Urquidez, 494 U.S. at 265; Duncan, 391 U.S. at 166-167; Maxwell, 176 U.S. at 608; Malloy, 378 U.S. at 4-5, 22; Robertson, 165 U.S. at 282.

It should be remembered the famous declaration of rights, promulgated in 1780, in which Massachusetts declared, among

other things, that 'all men are born free and equal, and have
certain natural, essential, and unalienable rights, amoung which
may be reckoned the right of enjoying and defending their lives
and liberties; that of aquiring, possessing, and protecting
property; in fine, that of seeking and obtaining their safety
and happiness.' Robertson , 165 U.S. at 294.

### THE CONSTITUTION NEVER YIELDS AND NEVER LOSES ITS FORCE

"The Constitution itself never yields . . . it neither
changes with time nor does it in theory bend to the force of
circumstances . . .. It is a law for rulers and people, equally
in war and in peace, and covers with the shield of its protection
all classes of men, at all times and under all circumantances.'

Its principles cannot, therefore, be set aside in order to meet
the supposed necessities of great crises. 'No doctrine involving
more pernicious  consequences was ever invented by the wit of
man than that any of its provisions can be suspended during
any of the great exigencies of government." Downes, 182 U.S.
at 370, 381; Milligan, 71 U.S. at 121.

The Constitution is not to be obeyed or disobeyed as the
circumstances of a particular crisis may seem to warrant. The
People have decreed that it shall be the supreme law of the
land at all times. Congress or any department of the federal
government cannot violate the Constitution in order to serve
particular interests in our or in foreign lands. Even the district

and Supreme Courts must heed the mandates of the Constitution. No one in official station, to whatever department of the government she/he belongs, can disobey its commands without violating the obligation of the Oath taken. Downes, 182 U.S. at 384-85.

### CONGRESS MISUSED THE COMMERCE CLAUSE TO USURP POWER TO UNLAWFULLY DISARM AND TO IMPRISON THOUSANDS OF UNITED STATES CITIZENS

As fully established above, Congress ignored its duty, clear positive injunctions enumerated in the Constitution, and clear Supreme Court precedent, and misused Article I, § 8, Clause 3 of the Constitution to usurp its power to unlawfully disarm, and to imprison thousands of Citizens who, resting on their clear Constitutional rights, refused to disarm. The Law then and now, is clear that power from Article I, § 8, Clause 3, cannot be exerted except with due regard to other provision of the Constitution. Robertson, 165 U.S. at 293; Downes, 182 U.S. at 281. Particularly, those positive prohibitions enumerated in the body of the first ten Amendments, and the fundamental guarantees of life, liberty, and property. See Robertson, 165 U.S. at 218, 293-294, 297; Downes, 182 U.S. at 182-83. While Congress may enact regulations for the conduct of commerce among the several states, and may perhaps, prescribe punishment for the violation of such regulations, it may not, in so doing, ignore other clauses of the Constitution. Robertson, 165 U.S. at 293-94; Downes, 182 U.S. at 281, 292, 295. For instance, a regulation of commerce cannot be sustained which, in disregard

of the expressed injunction of the Second Amendment, Congress
shall not infringe upon the Second Amendment, <u>Cruikshank</u>, 92
U.S. at 551-553; <u>Presser</u>, 116 U.S. at 264-65; <u>Maxwell</u>, 176 U.S.
at 597; <u>Miller</u>, 153 U.S. at 538. And, that no "person's' right
to bear arms shall be infringed, <u>Milligan</u>, 71 U.S. at 103-104;
<u>Robertson</u>, 165 U.S. at 282; <u>Scott</u>, 60 U.S. at 417, 450; <u>Verduge-
Urquidez</u>, 494 U.S. at 265; <u>Poe</u>, 367 U.S. at 497, 54243; <u>Laird</u> ,
92 S.Ct. at 2330; <u>Duncan</u>, 391 U.S. at 166-167.

The people of America possessed the "right" to keep and
bear arms long before the Constitution of the United States.
The right there specified is of "bearing arms for lawful purposes."
This is not a right granted by the Constitution. Neither is
it in any manner dependent upon that instrument for its existence.
The Second Amendment declares that it shall not be infringed;
but this, as has been seen, means no more than it shall not
be infringed by Congress. <u>Cruikshank</u>, 92 U.S. at 551-553; <u>See
also</u>  <u>Presser</u>, 116 U.S. at 264-65; <u>Maxwell</u>, 176 U.S. at 597.
Further, the Second Amendment's central purpose is to assure
that the federal government may not disarm individual Citizens;
and provide a right on the part of individuals to possess and
use firearms in the defense of themselves and their homes. A
right that directly limits action by Congress or by the Executive
Branch. **American Constituional Law**, Vol. 1, n. 221 at 902 (3d
ed. 2000); <u>Emerson</u>, 270 F.3f at 236, 268-69; <u>Cruikshank</u>, 92
U.S. at 551-553.

The Fifth Amendment and Article I, § 8, Clause 3 (the commere clause) guarantees every Citizen a substantial "right" to engage in interstate trade, such as purchasing food, house hold goods, clothings, automobiles and other legal merchandise, including firearms, all which had been shipped in interstate commerce. See Crutchen v. Kentucky, 141 U.S. 47, 57 (1891); Dennis v. Higgins, 498 U.S. 439, 448 (1991). See also U.S. v. Lopez, 131 L.Ed.2d 626, 654 (1995); Printz v. U.S., 521 U.S. 898, 937-939 (1997). And, the people of each State shall have free ingress and egress to and from any other State, and shall enjoy therein all the privileges of trade and commerce. Maxwell, 176 U.S. at 588.

All Citizens thus, have a right under the Second and fifth Amendments and the Commerce Clause, to engage in interstate trade, travel, and in purchasing all merchandise shipped legally in interstate commcrce, including legal firearms for home and family and self protection, and for lawful purposes, free from discriminatory regulations such as § 922 (g) (1), which the Constitution clearly prohibits the Federal Governemnt (Congress) to create such a discriminatory regulation, to forbid Citizens to purchase a legal firearm for the protections of her/his home, family and self against home invaders, rapists, child-molesters, and muderers. Especially when it is well established that State and Federal Government police CANNOT provide even a minimal guarantee of protection here.  The federal regulation, § 922

(g) (1) directly infringes on that right. See e.g., <u>Boston Stock Exchange v. State Tax Comm'n</u>, 429 U.S. 318, 320 n. 3 (1977); <u>Dennis</u>, 498 U.S. at 448. Thus, the federal government's regulation here deprives United States Citizens of their right to defend and protect their homes, families, and self, a undeniable right protected by the Second and Fifth Amendments, and the Commerce Clause itself. See <u>Robertson</u>, 165 U.S. at 281-82; 292-94; **Amercian Constitutional Law**, Vol. 1, n. 221 at 902 (3d ed. 2000); <u>Emerson</u>, 270 F.3d at 268-69. And, a right which Congrerss is forbidden to infringe. <u>Presser</u>, 116 U.S. at 264-65; <u>Maxwell</u>, 176 U.S. at 597; <u>Cruikshank</u>, 92 U.S. at 551-553.

For the above reasons and law, Congress was clearly forbidden to use Article 1, § 8, Clause 3 of the Constitution as its power to disarm and imprison certain Amercain Citizens who felied on their rights to refuse to obey an unlawful law, and thus, to disarm. See <u>Robertson</u>, 165 U.S. at 281-82, 292-97; <u>Downes</u>, 182 U.S. at 281-83, 292, 295, 381.

**STATES MAY DEPRIVE ITS "VIOLENT" CRIMINALS, LUNATICS AND INFANTS OF FIREARMS. HOWEVER, THE FEDERAL GOVERNMENT MAY NOT DEPRIVE ANY CITIZEN OF THE UNITED STATES OF FIREARMS**

When the Constitution was created and became law, it did not apply to the States. The Fourteenth Amendment extended the first eight  Amendments to the States. However, today there is some question whether the Secons Amendment applies to the States. See <u>Fresno Rifle and Pistol Club, Inc.</u>, 965 F.2d at 730-31.   Therefore, showing that the Founders intended that

that the States (not the federal government), after a due process
hearing, may deprive its "violent" criminals, lunatics, and
infants of firearms.  The Supreme Court in Cruikshank, 92 U.S.
at 551-553; Presser, 116 U.S. at 264-65; Maxwell, 176 U.S. at
597, and Miller, 153 U.S. at 538, made clear, that the Second
Amendment only limited federal action. See also  Fresno Rifle
and Pistol Club, Inc., 965 F.2d at 731. Thus, our Forefathers,
the Founders of the Constitution and its Second Amendment, left
it to the States to deprive its "violent" criminals, lunatics,
and infants of firearms.

### U.S. v. MILLER, 307 U.S. 174 (1939) WOULD NOT STAND TODAY

The issue in Miller, involved Miller possessing a shotgun
which violated the government's law that prohibited Citizens
to own and possess a shotgun with a barrel less than 18 inches
in length without first registering it with the government and
paying for a permit.  In its decision the Miller Court said:
In the absence of any evidence tending to show that possession
or use of a shotgun having a barrel of less than eighteen inches
in length at this time has some reasonable relationship to the
preservation or efficiency of a well regulated militia, we cannot
say that the Second Amendment guarantees the right to keep and
bear such an instrument.  The Court also said, certainly . . .
this weapon is not any part of the ordinary military equipment
or could contribute to the common defense. Miller, 307 U.S. at 178.

In 1939, the United States military's common weapon was the 30-06 Springfield rifle and the .45 calber fully automatic Tommy-gun.  In the Vietnam war of the 1960's, because of the massive heavy foliage of the Vietnam jungle where one encountered the enemy at very close range, the cut-off or short-barrelled shotgun became the weapon often used. And, the same in the now Iraq war, at close range in buildings and houses there, the cut-off or short-barrelled shotgun is a weapon often used.

Today, the pistol, and the cut-off or short-barrelled shotgun are both very common military weapons.

The _Miller_ Court said, absence of any evidence tending to show the possession or use of a "shortgun having a barrel less than 18 inches," "at this time" has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an intrument.  The Court relied on that the weapon at that time was not part of the ordinary military equipment or that its use could contribute to the common defense. _Miller_, 307 U.S. at 178. Thus, today, the _Miller_ decision would have a different outcome.

And, further, today, experts on home, family and self protections recognize and recommends the cut-off or short-barrelled shotgun as the most dependable and best weapon for home, family and self protections.  Because this weapon is so perfect for defenses as set forth above, today, every police car is equipped with one.

34

Because this weapon is such a perfect weapon for defense
of one's home, family, and self,; and against tyrannical government
officials, naturally the government and its police (and criminals)
want to outlaw possession of such a weapon by the populance
of the United States.

History has proven that criminals and a tyrannical government
"always grows" and functions best with an unarmed and defenseless
populace.

For the above reasons, the <u>Miller</u> decision would not be
rendered today.

### THE COURT MUST PLACE ITSELF IN THE CONDITIONS OF THE MEN WHO FRAMED THE CONSTITUTION AND UNDER THOSE CONDITIONS SEEK OUT THEIR INTENT AND PURPOSE FOR THAT INSTRUMENT AND THE ISSUES PRESENTED IN THIS DOCUMENT

The issue before this Court is the Federal government's
law which, without a hearing for the Citizens, absolutely disarms
and forbids a "class" of Americans (thousands) to possess a
legal firearm for the purpose of defending their families, homes,
and theirselves; and that requires imprisonment, some up to
life, for any one in that "class" who stands on her/his rights,
and refuses to disarm.

The Constitution of the United States guarantees:

> "A well regulated militia, being necessary to the
> security of a free state, the right of the people
> to keep and bear arms, shall not be infringed."

Second Amendment, Constitution of the United States.

The Supreme Court of the United States held: "The Second

Amendment declares that it shall not be infringed; this means that it shall not be infringed by Congress. This is one of the Amendments that has no other effect than to restrict the power of the national government." Cruikshank, 92 U.S. at 551-553; Presser, 116 U.S. at 264-65; Maxwell, 176 U.S. at 597. "The Constitution provides, . . . that no 'person's' right to bear arms shall be infringed." Milligan, 71 U.S. at 103-104; Robertson, 165 U.S. at 282; Scott, 60 U.S. at 417, 450.

The Supreme Court held: "It is never forgotten in the construction of the language of the Constitution . . . we are to place ourselves as nearly as possible in the  conditions of the men who framed the instrument." Ex parte Baine, 121 U.S. 1, 12 (1887). See also Cohens v. Virginia, 19 U.S. 264, 418 (1821).  "The Constitution is a written instrument. As such its meaning does not change. That which it ment when adopted it means now." South Carolina v. U.S., 199 U.S. 437, 448 (1905). "The Amendments should be read in 'a sense most obuious to the common understanding at the time of its adoption.' For it was for public adoption that it was proposed.'" Eisner v. Macomber, 252 U.S. 189, 220 (1920). See also Report No. 21, Senate Judiciary Committee, 42d Cong., 2d Sess. 2 (25 Jan. 1872).

Therefore, this Court must place itself in as nearly as possible the same conditions  as the Framers of the Constitution and its Amendments, and seek out those Founders' true intent and purpose for the Constitution and Amendments involved here.

**ALL ABLE-BODIED MALE CITIZEN OF THE UNITED STATES
ARE PART OF EITHER THE ORGANIZED OR THE UNORGANIZED
MILITIA, AND THUS MUST BE ARMED WITH PERSONAL WEAPONS**

"Who are the Militia? They consist of the whole people
. . ." **Statement of George Mason, June 14, 1788.** See also The
Militia Act of 1792, enacted May 8, 1792, and Title 10 U.S.C.
§ 311 (a) and (b) (2) (2006). **James Madison** said, of the Militia
as defending the people against federal tyranny. **James Madison
Federalist 46.**

The Militia comprised of all males physically capable of
acting in concert for the common defense. U.S. v. Miller, 307
U.S. 174, 179-81 (1939). See also 10 U.S.C. § 311 (a)(the militia
of the United States consists of all able-bodied males at least
17 years of age). And § 311 (b) (2)(the unorgainzed militia,
which consists of the members of the militia who are not members
of the national guard or naval militia). See Title 10 U.S.C.
§ 311 (a) and (b) (2) (2006).

Therefore, all able-bodied male citizens are required to
be armed with their own weapons. See Miller, 307 U.S. at 179-
181.

**James Madison in Federalist 46** spoke of the Militia as
defending the people against federal tyranny. As history has
proven, criminals and government tyranny grows and functions
well in an unarmed populace. Thus, the Second Amendment and
the peoples' right to keep and bear arms shall not be infringed
by the federal government or its Congress. See Cruikshank, 92
U.S. at 551-553.

37

## ALL CITIZENS OF THE UNITED STATES MAY DISREGARD
## ALL UNLAWFUL ACTS OF CONGRESS

As established above, Congress usurped its power when it
created and passed its law that disarmed certain American
Citizens. A law that required imprisonment, up to life in some
cases, for any person in that "class" who stood on their rights,
and refused to obey that federal law.

The Law of the Land is very clear. Every Citizen has a
right to treat unlawful acts of Congress as a nullity, because
she/he is not legally bound to obey that act. See Robertson,
165 U.S. at 296-297. See also Downes, 182 U.S. at 292, 295,
381.  Further, to punish a person because he has done what the
law plainly allows him to do is a due process violation of the
most basic sort. Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978);
North Carolina v. Pearce, 395 U.S. 711, 738.

The Law of the Land is clear that Congress cannot disarm,
or imprison American Citizens who stand on their right to possess
a legal firearm for home, family and self protections. Thus,
the federal government and its agents are punishing Petitioner
and thousands of American Citizens because they have done what
the "law" of the land plainly allows them to do.

## THE DISTRICT AND CIRCUIT COURTS ARE OBLIGATED
## TO ADHERE TO SUPREME COURT PRECEDENTS

As fully established above, Congress usurped  power it
was forbidden to use, and in violation of the Second and Fifth
Amendments and Article I, § 8, Clause 3, unlawfully passed a

38

law that disarmed thousands of Citizens, and further imprisoned thousands of American Citizens who, relying on their rights, refused to disarm.

Courts have a duty to preserve and protect the Bill of Rights. In this Case, the Second and Fifth Amendments. See Galloway v. U.S., 319 U.S. 372, 407 (1943). The courts of the United States have no higher duty than to exert its full authority to prevent all violations of the principles of the Constitution. Downes, 182 U.S. at 382; Marbury v. Madson, 5 U.S. 137, 174, 176-77, 180 (1803); Cooper v. Aaron, 358 U.S. 1, 18 (1958).

Regardless of whether this Court agrees or not with the above cited  Supreme Court precedents and their analysis of and the interpertation of the Second Amendment, they are the Law of the Land, and this Court is bound by them. See Quilici, 695 F.2d at 270; Early v. Packer, 547 U.S. 3, 10-11 (2002); U.S. v. Dabeit, 231 F.3d 797, 984 (5th Cir. 2000); Marbury, 5 U.S. at 180; Cooper, 358 U.S. at 18.

Therefore, this Court must adhere to the above cited Supreme Court precedents, and Constituional commands.

**PETITIONER HAS A RIGHT TO DEMAND THAT THE GOVERNMENT PROTECT HIS RIGHTS**

Petitioner's petition/complaint sought to protect and to enforce rights for himself and other Citizens. <u>See</u> page 1-2 of the petition.

Petitioner has shown a clear usurpation by Congress in its passing a law which required disarming American Citizens, and which required imprisonment of thousands of Citizens who did nothing more than refuse to disarm. The Respondents' attorneys who are themselves, Government officials, did not dispute Petitioner's legal claims that he lodged against the Respondents.

All Respondents in this case are federal government officials, thus, are mandated to support the Constitution and its Amendments <u>See</u> **Article VI, Clause 3 of our Constitution,** and they must promote, and protect individual and collective rights of all United States Citizens <u>See</u> <u>U.S. v. Cruikshank</u>, 92 U.S. at 549. Each law passed by Congress and approved by the President, must support and be made in pursuance of the Constitution. <u>See</u> **Article VI, Clause 2, Constitution of the United States.**

As established above, the Government's law disarming Citizens, and one which the Government used to imprison Petitioner and thousands of America Citizens for doing nothing more than possess a legal firearm, Congress did not have the power to enact.

Petitioner has a right to demand that the federal Government promote, and to protect his individual and his collective rights. <u>Cruikshank</u>, 92 U.S. at 549. This right includes his right to be free from Respondents' prisons, when the Respondents are

40

holding him under an unlawful law, one which the Government
was forbidden to pass. Therefore, this case warrants the
extraordinery remedy of a writ of mandamus pursuant to 28 U.S.C.
§ 1361, and 28 U.S.C. § 1651 (a). See also 28 U.S.C. § 2241.

### THIS COURT HAS JURISDICTION OVER THIS CASE

This case is about compelling an Officer of the United
States to perform his/her duty.

The district courts shall have original jurisdiction of
any action in the nature of a mandamus to compel an officer
or employee of the United States or any agency thereof to perform
a duty owed to the plaintiff. 28 U.S.C. § 1361. See also  28
U.S.C. § 1651 (a) and 28 U.S.C. § 2241.

For mandamus jurisdiction to exist, three elements must
generally co-exist. "A plaintiff must show a clear right to
the relief sought, a clear duty by the defendants to do the
particular act, and that no other adequate remedy is available."
U.S. v. O'Neil, 767 F.2d 1111, 1112 (5th Cir. 1985).

Petitioner has met all three of these elements warranting
this Court to proceed with the merits of the claims against
the Respondents. Petitioner has a clear right to the relief
sought; the Respondents have a clear duty to ensure that all
federal government laws do not conflict with the Constitution
or with Supreme Court precedents; and they have a duty to ensure
that no American Citizen is imprisoned under a law that Congress
did not have the power to pass. Further, Petitioner has no other

41

remedy avilable to him in which he can bring his complaint and
request for redress against the named Respondents, and gain
the relief he has requested.

Advisory mandamus has its roots in the court's reference
to mandamus review of "basic, undecided questions." <u>Schlagenhauf</u>
<u>v. Holder</u>, 379 U.S. 104, 110 (1964). It is appropriate when
the issue presented is novel, of great public importance, and
likely to recur. <u>U.S. v. Horn</u>, 29 F.3d 754, 769 (1st Cir. 1994).

There is no question that the task confronting this Court
is a difficult one, and is of great public importance, and will
certainly recur, and continue unless this Court takes this
opportunity and address Petitioner's claims lodged against the
Respondents, and to also require the Respondents to comply with
the Constitution and Supreme Court precedents controlling the
issues herein.

<u>Dated</u>  April 20, 2006

                              Respectfully submitted,

                              _William J.R. Embrey_
                              William J.R. Embrey
                              Pro se Petitioner
                              #87263-132
                              P.O. Box 1000
                              Oxford, WI 53952

                    CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was
mailed to:

Stephen W. Riddell
Assistant U.S. Attorney
555  4th Street, N.W., Room 10-911
Washington, D.C. 20530

                              _William J.R. Embrey_
                              William J.R. Embrey