UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

WILLIAM J.R. EMBREY,

       Petitioner,          **Civil Action No. 05-2022 (RCL)**

  vs.

GEORGE W. BUSH, et al.,

       Respondents.

_____/

**FACTS AND SUGGESTIONS IN SUPPORT OF PETITIONER'S**
**PETITION AND CLAIMS FILED WITH THIS COURT**

Petitioner William J.R. Embrey, an American Citizen, and a <u>pro</u> <u>se</u> prisoner, seeks an order from this Court declaring his rights, and further seeking an order prohibiting Respondents to disarm, and to imprison American Citizens purely for possessing a legal firearm in their homes for home, family and self protection, and for legal hunting.

Petitioner presents the following facts and suggestions in support of his petition and orther pleadings filed with this Court.

**RECEIVED**

JUL 1 2 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

A SHORT REVIEW OF THE AMERICAN CITIZENS' RIGHT
TO KEEP AND BEAR ARMS, AND THE FEDERAL GOVERNMENT'S
INFRINGEMENT OF THAT RIGHT

A review of English history explains that in the 1700's,
Englishmen had the right to keep and bear arms. Therefore,
because keeping a gun could not be a crime was the reason for
the decision in Rex v. Gardner, 7 Mod. 279, 87 Eng. Rep. 1240
(K.B. 1739), where the defendant argued that he had not killed
any game, and to charge only that he kept a gun was improper.
Id. at 279, 87 Eng. Rep. at 1241. The court put great weight
in the objection to this conviction,  which it quashed on the
grounds that the law did  not extend to prohibit a man from
keeping a gun for his necessary defense, but only for making
the forbidden use of it. Id. at 280, 87 Eng. Rep. at 1241.
After Gardner, the English decisions all agreed that keeping
a gun was no offense. In Malloch v. Eastly, involving a conviction
for killing a pheasant beyond the boundaries of one's mannor,
"all the courts agreed, that the mere having a gun was no offense
within the game laws, for a man may keep a gun for the defense
of his home and family, but the party must use the gun to kill
game before he can incur any penalty; and they said this point
was settled and determined."Id 7 Mod. 482, 87 Eng. Rep. 1370,
II Chitty at 1093, 1103 ( K.B. 1744).  The court held similarly
in Wingfield v. Stratford, 1 Wils. K.B. 315, Eng. Rep. 637 (K.B.
1752), where the plaintiff's gun was seized, the court held,
that a gun is not necessarily to be taken to be an engine to
kill game, as it does not appear upon the record that the plaintiff
killed game with it; he might use it to shoot crows, or destroy

1

vermin . . ." The court also held: It is not to be imagined,
that it was the intention of the Legislature . . . to disarm
all the people of England. . . . As a gun may be kept for the
defense of a man's house, and for divers    other lawful purposes,
it was necassary to allege . . . that the gun had been used
for killing the game. Id., Sayer 15, 16, 96 Eng. Rep. at 787
(K.B. 1752). A gun may be used for other purposes, as protection
of a man's house Rex v. Hartley, Cald. 175, II Chitty, at 1178,
1183 (1782). "The act of keeping a gun was in itself ambiguous,
and that it must be shown to be kept for the purpose of killing
game . . ." "[It] is not an offense to keep or use a gun, unless
it be kept or used for the purpose of killing game . . ." Rex
v. Thompson, 2 T.R. 18, 21 Eng. Rep. 10, 12 (K.B. 1787).

American Citizens inherited these above rights from their
English Ancestors; and had these (the right to keep and bear
Arms) and many other unalienable and natural rights long before
the Constitution of the United States. See Robertson v. Baldwin,
165 U.S. 275, 281-282 (1897); U.S. v. Cruikshank, 92 U.S. 542,
551-554 (1875); Downes v. Bidwell, 182 U.S. 244, 282-283 (1901).

In 1856, the Supreme Court of the United States said:
"Congress cannot deny to the people the right to keep and bear
Arms." Scott v. Sandford, 60 U.S. 393, 449-450 (1956). The Court
further said, "Citizens have a right to keep and carry Arms
wherever they go." Id. 60 U.S. at 417. See also State v. Dawson,
where the Court said: "The carrying of a gun, per se, constitues
no offense," whether for business or amusement. 272 N.C. 535,
159 S.E. 2d 1, 8-15 (1962).

2

After the war between the States, attampts were made to disarm black citizens. See Laws of Miss. 1865, at 165 (29 Nov. 1865); CONG. GLOBE, 39th Cong., 1st Sess. pt. 1, 40 (13 Dec. 1865). Thus, it was stated: "The civil law prohibits the colored man from bearing arms," and their arms are taken from them by civil authorities. . . . Thus, the right of the people to keep and bear Arms as provided in the Constitution is infringed. . . . Exec. Doc. No. 70, 39th Cong., 1st Sess. 233, 236 (1866).

In 1866, the Supreme Court said: "The Constitution provides, . . . that no 'person's' right to keep and bear Arms shall be infringed." Ex parte Milligan, 71 U.S. 2, 103-104 (1866). And in 1875, the Court said that Citizens had a right to bear arms for lawful purposes. U.S. v. Cruikshank, 92 U.S. 542, 533 (1875). And in 1897, the Court said that the people had a right to keep and bear Arms. Robertson v. Baldwin, 165 U.S. 275, 282 (1897).

In 1859 the Texas Supreme Court in Cockrum v. State, 24 Tex. 394 (1859), explained that the object of the Second Amendment was to ensure that "the people cannot be effectually oppressed and enslaved, who are not first disarmed." Id at 401-402.  In 1872 the Texas Supreme Court reiterated the view that the Federal Constitution protected the right to keep and bear Arms - a "personal right" which is "inherent and inalienable to man" from deprivation. English v. State, 35 Tex. 473, 477 (1872). Citing the Second Amendment, the Court agreed with Joel P. Bishop Id. 35 Tex. at 475.  In Robertson v. Baldwin, the Court treated the bearing of arms as a fundamental and centuries-old right

3

that could not be infringed. Id. 165 U.S. 275, 281-282, 293,
302 (1897).

In two cases the Supreme Court upheld the right of individuals
to have and use firearms in self-defense. See Beard v. U.S.,
158 U.S. 550, 552, 558, 560, 563-64 (1895); Patsone v. Pennsylvania,
232 U.S. 138, 143-44 (1914).  The Supreme Court has on several
occasions reiterated the federal common-law right of arming
for self-defense. Gourko v. U.S., 153 U.S. 183, 191 (1894),
the Court held that if "the defendant had reasonable grounds
to believe, and in fact believed, that the deceased intended
to take his life, or to inflict upon him great bodily harm,
and, so beliving, armed himself solely for necessary self-defense
. . . , the jury were not authorized to find him guilty of murder
because of his having deliberately armed himself, provided he
rightfully so armed himself for purposes simply of self-defense..."
Id. at 191. And, see Thompson v. U.S., 155 U.S. 171, 278 (1894)
("the purpose of the defendant in arming himself was for self-
defense"). Rowe v. U.S., 164 U.S. 546, 547-48 (1896) (self-defense
where "after deceased began cutting defendant the latter drew
his pistol and fired."); Brown v. U.S., 256 U.S. 335, 342 (1921)
(in view of deceased's threats defendant "had taken a pistol
with him, and had laid it in his coat upon a dump").  The Second
Amendment embodies the right to defend oneself and one's home
against physical attack. The Second Amendment guarantees the
right to means of self-defense. U.S. v. Gomez, 92 F.3d 770,
774 n. 7 (9th Cir. 1996).

Representative Butler advocated protection  for "the well

known constitutional provision guaranteeing the right of the
Citizin to keep and bear Arms." H.R. Rep. No. 37, 41st Cong.,
3d Sess. 3 (20 Feb. 1871); GLOBE, 42 Cong., 1st Sess. 457-76
(1871).

In Wilson v. State, 33 Ark. 557, 34 AM Rep. 52 (1878),
in reversing a conviction for carrying a revolver, the Court
said: "But to prohibit the citizen from wearing or carrying
arms . . . is an unwarranted restriction upon his Constitutional
right to keep and bear Arms."  If cowardly and dishonorable
men sometimes shoot unarmed men with pistols, the evil must
be prevented by the penitentiary and gallows, and not by a general
deprivation of Constitutional privileges." 33 Ark. at 560, 34
AM Rep. at 54-55.

In Fife v. State, 31 Ark. 455 (1876), the Court recognized
that the Constitution of the United States protected the citizens'
right to keep and bear Arms. That the Second Amendment guaranteed
American citizens the right to keep and bear Arms, such are
necessary and suitable to a free people, to enable them to resist
oppression, prevent usurpation, repeal invasion, etc. etc."
Id. at 458, 460-61. See also  Scott, 60 U.S. at 417, 450; Robertson,
165 U.S. at 281-282; Milligan, 71 U.S. at 103-104; Cruikshank,
92 U.S. at 53.

The Supreme Court of North Carolina in State v. Kerner,
181 N.C. 574, 107 S.E. 222 (1921), forcefully declared that
the right to keep and bear Arms was "a sacred right based upon
the experience of the ages in order that the people may be

accustomed to bear arms and ready to use them for protection of their liberties or their country when occasion serves." Id. at 575, 107 S.E. 223. Historically, "'pistol' ex vi termini is properly inclided within the word 'Arms,' and . . . the right to bear such Arms cannot be infringed." Id. at 576, 107 S.E. 224. The Constitutional guarantee extends to arms that the individual could keep and bear, and not to war planes or cannons, submarines, deadly gases, and airplanes carrying bombs. But the ordinary private citizens whose right to carry arms cannot be infringed upon, is not likely to purchase these expensive and most modern devices just named. To him the rifle, the musket, the shotgun, and pistol are about the only arms which he could be expected to "bear," and his right to do this is that which is guaranteed by the Constitution. Id. The arms that the individual is guaranteed the right to have are those which ordinarily are and can be purchased,  kept, and borne by a private individual. Id. at 577-78, 107 S.E. 224-25.

The Michigan Supreme Court in People v. Zerillo, 219 Mich. 635, 189 N.W. 927 (1922) held that "every person has a right to bear arms for the defense of himself and the State." The Court went on to say, "firearms serve the people of this country a useful purpose wholly aside from hunting, and under a Constitution like ours, granting . . . to every person the right to bear arms for the defense of himself and the State, . . . the legislature has no power to constitute it a crime for a person, alien, or citizen, to possess a revolver for the legitimate defense of

himself and his property." Id. at 638-39, 189 N.W. at 928. See
also People v. Nakamura, 99 Colo. 262, 62 P.2d 246 (1936).

In Hutchinson v. Rosetti, 205 N.Y.S. 2d. 526, 24 Misc.
949 (1960), the Court ordered the police to return a hunting
rifle to one who had used it to defend himself. The Court said,
"there is the Constitutional guarantee of the right of the
individual to bear Arms. Amendment II." Id. 205 N.Y.S. 2d. at
529. The Court added that the presumption of innocence and "the
elemental right of self-defense" were both basic and long
recognized in Anglo-American jurispudence. "The Constitution
permits citizens the right to bear arms." Id. 205 N.Y.S. 2d at
529-531. See also  Scott, 60 U.S. at 417, 450; Milligan, 71
U.S. at 103-104; Robertson, 165 U.S. at 282; Cruikshank, 92
U.S. at 533.

Supreme Court Justice Joseph Story wrote in his 1833
Commontaries on the Constitution, that "the right of the Citizens
to keep and bear Arms has justly been considered, as the palladium
of the liberties of the republic, since it offers a strong
moral check against usurpation and arbitrary power of the rulers;
. . . " 3 J. Story, Commontaries on the Constitution 746 (1833).

"The Second Amendment protects 'the right of the people
to keep and bear Arms.'" U.S. v. Verdugo-Urquidez, 494 U.S.
295, 265 (1990). See also Duncan v. Louisiana, 391 U.S. 145,
166-170 (1968); Robertson v. Baldwin, 165 U.S. 275, 281-282
(1897); Scott v. Sandford, 60 U.S. 393, 416-417, 449-451 (1856);
Maxwell v. Dow, 176 U.S. 581, 597 (1900); Presser v. Illinois,
116 U.S. 252, 264-265 (1886).

Prior to and in the 1930's, **Adolf Hitler's regime** enacted
Gun Control and Disarmament laws that led to the malicious
premeditated slaughter of thousands of innocent unarmed Jews.
Following **Hitler's** Gun Control and Disarmament practice,in 1934,
the United States Congress (whose Constitutional duty is to protect
the Constitution of the United States, its Bill of Rights, and
the rights of the American people, Marbury v. Madison, 5 U.S.
127, 162, 176-177, 180 (1803), such as "Congress cannot deny
to the people the right to keep and bear Arms," Scott v. Sandford, 60
U.S. 393, 450 (1856).The Constitution also gives the people
the right to keep and carry Arms wherever they go. Id. 60 U.S.
at 416-417. "The Constitution provides, . . . that no 'person's'
right to bear Arms shall be infringed.'" Ex parte Milligan,
71 U.S. 2, 103-104 (1866), "The right of the people to keep
and bear Arms," Robertson v. Baldwin, 165 U.S. 275, 281-282
(1879), See also Logan v. U.S., 144 U.S. 263, 272 (1892),
"The Second Amendment protects 'the right of the people to keep
and bear Arms,'" U.S. v. Verdugo-Urquidez, 494 U.S. 295, 265
(1990)), commenced enacting Gun Control and Disarmament laws
against the American people. See The National Firearms Act of
1934, amended in 1968, and again in 1986.

The National Firearms Act of 1934, had nothing to do with
crime and everything to do with expanding Federal government
powers. Incorporated into the 1934 Gun Control and Disarmament
Act, were laws that made instant criminals of thousands of innocent

American citizens for doing nothing but possess a shotgun that
they had possessed for years. The Federal government's 1934
Gun laws demanded that every American citizen who possessed
(no matter how long they had possessed it) a shotgun with a
barrel less than 18 inches, to be finger printed with their
picture taken and both placed in the government's files, and
further, to pay the Federal government $200.00 for a "stamp"
to be affixed to the shotgun which the citizen had owned for
years. At that time, most of these shotguns were used for home,
family and self protections, and for hunting, and, were worth
less than $20.00 when new. None-the-less, the Federal Government
put hundreds of Federal agents on the streets to "root-out"
any American citizen who had not complied with its Gun Control
and Disarmament laws, and to prosecute, and to imprison any
American citizen who failed to comply with that Federal government
Gun law. Of course, the Federal government **never adequately**
informed the public of its laws, such as publishing said laws
on the front page of every New Paper, most, if not all American
citizens knew nothing of this Federal government Gun Control
and Disarmament law, until their front door was "kicked in"
by Federal agents, their homes raided, their property seized,
and they were dragged off to one of the Federal government's
prisons. The United States Supreme Court approved this Federal
government Gun Control and Disarmament law. See U.S. v. Miller,
307 U.S. 174 (1939). It must be noted the Miller ruling was
an illegal windfall for the Government because Mr. Miller was

9

completely <u>unaware</u> that the Government had taken the case to
the Supreme Court. Thus, Mr. Miller being unaware, had no
representation at that Court hearing, therefore, the Government
was free to tell the Court what ever lies it wished without being
objected to, and of course, the Court believing them, ruled in
the government's favor.

In 1968, with no legislative hearings, no committee reports,
and no commettee considerations  <u>See</u> <u>Scarbough v. U.S.</u>, 431
U.S. 563, 570 n. 9 (1977), Congress enormously expanded its
1934 Gun Control Disarmament Act by adding a law that strickly
stright-out disarmed American citizens. <u>See</u> Congress' law, The
Omnibus Crime Control Act and its amendments (1968), and 18
U.S.C. §§ 1201-1202 (1968).  Just like **Adolf Hitler's** Gun laws,
Congress' 1968 Disarmament laws particulary **targeted and disarmed
an entire "Class" (thousands)** of American citizens, who Congress,
on their own  "whim," with no legislative hearings, no committee
reports, and no committee considerations, deemed these American
citizens to be **undersirable citizens.** <u>See</u> <u>Scarborough</u>, 431 U.S.
at 570 n. 9; <u>U.S. v. Bass</u>, 404 U.S. 336, 345 and ns. 13-14
(1971).  **Adolf Hitler** had deemed Jews and others as undersirable
citizens as they were led to the ovens and to slaughter.

Congress' 1968 Disarmament of American citizens law, made
criminals out of thousands of Americans with no criminal intent,
and gave those citizens no option other than surrender their
property without any conpensation, and without any Due Process
of Law guaranteed them by the Fifth Amendment. See <u>U.S. v. Lee</u>,

106 U.S. 196, 220 (1882)("It is absolutely prohibited, both
to  the executive and the legislative, to deprive any one of
life, liberty, or property without due process.").

In 1986, Congress again enforced and expanded its 1934
and 1968 Disarmament laws, like **Hitler**, disarming an entire
"Class" (thousands) of American Citizens, without any due process
of law, or other considerations. See 18 U.S.C. § 922 (g)(1).

When placed side-by-side, **Adolf Hitler's Nazi** Gun Control
and Disarmament laws and the United States Congress' Gun Control
and Disarmament Act of 1968 is vertually the same wording. Thus,
evidence Congress, in enacting its 1934 and 1968 and 1986 Gun
Control and Disarmament laws, may have copied and/or used as
a guide, **Hitler's Nazi Code** used to disarm the Jews, making
it easier to later lead them to the ovens, and to slaughter.

What kind of person, even a Congressperson or federal judge,
who would even consider enacting and approving Gun Control and
Disarmament laws like, or even remotely similar to **Adolf Hitler's
Nazi Gun Control and Disarmament laws.???**

Federal judges whose Constitutional duty is to protect
both the Constititution and its Bill of Rights, and the rights
of American Citizens, Marbury, 5 U.S. at 180, have approved
and supported the Federal Government's disarming of American
Citizens (Just like Hitler did in Germany). Thus, evidence that
Congress and federal judges have a lot in common with **Hitler**.

11

Today, most Federal and State police, like **Adolf Hitler's Nazi police**, dress all in "black," and have "police dogs." But, the United States Federal and State police have added **"ski-mask"** type hoods to their dress, and look and act more like "assassins," rather than Constitutional and honorable police officers. See any "Cops" show on Fox T.V., or any News station showing the arrest of an American Citizen by Federal or States police. All one need do, is compare a 1939-1944 News Reel of **Hitler's Nazis** to todays T.V. News report of federal or State police arresting Americans, to see that there is little, if any difference between **Hitler's Nazis** and our Federal and State police. This writer would challenge any federal judge or any government agent to prove otherwise. Federal judges, being a bureaucratic part of the Federal government <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 498 (2000), naturally, approve and support the Federal government's apparant use of <u>Adolf</u> <u>Hitler's</u> <u>Nazi</u> Disarmament laws, to disarm American Citizens, and also support and approve the Federal and State police's apparant use of <u>Hitler's</u> Nazi Gestapo tactics against American Citizens. This writer would challenge any judge or government agent to prove otherwise.

"Experience hath shown, that even under the best froms of [government] those entrusted with power have, in time, and by slow operation, perverted it into tyranny." **Thomas Jefferson, 3rd President of the United States, 1743-1826.** "There is no more cruel tyranny than that which is exercised under cover of law, and with the colors of justice." **Monlesqiuer De L'Espirit**

Des Lois, 1748; U.S. Jannottie, 673 F.2d 578, 614-615 (3rd Cir. 1982). **John Locke**, compares government officials who usurp power to "robbers" and "pirates" and defends the right of violent resistance against them. **John Locke, SECOND TREATIES OF CIVIL GOVERNMENT, § 228 (1989).**

## THE FEDERAL GOVERNMENT IS STRICKLY PROHIBITED TO DISARM AMERICAN CITIZENS

For years the Federal government through its officials, have abused its limited authority as enunciated by the Constitution of the United States and by the Supreme Court, when it commenced disarming, and did disarm an entire "Class" (thousands) of American Citizens, and imprisoned thousands more for purely possessing a legal firearm, using the same methods employed by **Adolf Hitler and the Hitler regime** in disarming the Jews and others.  It is unbelievable that United States Attorneys and judges would actually support and defend this injustice upon the American people, when they have a duty to obey the Constitution and Supreme Court precedent law, and have a Constitutional duty to defend and protect the right of American Citizens. Marbury v. Madison, 5 U.S. 137, 180 (1803); U.S. v. Lee, 106 U.S. 196, 220 (1882); Cooper v. Aaron, 358 U.S. 1, 18 (1958); Davis v. Passman , 442 U.S. 228, 241-242 (1979).

"Congress cannot deny to the people the right to keep and bear Arms. The Constitution gives the people the right to keep and carry Arms wherever they go." Scott v. Sandford, 60 U.S. 393, 416-417, 449-451 (1856). "The Constitution provides, . . .

that no 'person's' right to keep and bear Arms shall be infringed."
Ex parte Milligan, 71 U.S. 2, 103-104 (1866); Maxwell v. Dow,
176 U.S. 581, 597 (1900). "The right of the people to keep
and bear Arms." Robertson v. Baldwin, 165 U.S. 275, 281-282
(1897); Logan v. U.S., 144 U.S. 263, 176 (1892). The people
in "bearing arms for lawful purposes." U.S. v. Cruikshank, 92
U.S. 542, 553 (1875); Deprivation of Civil Rights, 20 L.Ed.2d
1454, 1464 (1964). "The Second Amendment protects 'the right
of the people to keep and bear Arms.'" U.S. v. Verdugo-Urquidez,
494 U.S. 259, 265 (1990); Duncan v. Louisiana, 291 U.S. 145,
166-170 (1968). "The Second Amendment declares that it shall
not be infringed, but this means no more than that it shall
not be infringed by Congress. This is one of the Amendments
that has no other effect than to restrict the powers of the
National government." Persser v. Illinois, 116 U.S. 252, 264-
265 (1886); Miller v. Texas, 153 U.S. 535, 538 (1894); Maxwell,
176 U.S. at 597. "Congress shall never disarm any Citizen unless
such as are or have been in Actual Rebellion." **Documentary History
of the Constitution of the United States, 1787-1870, at 143
(1894);** U.S. v. Emerson, 270 F.3d 205, 299-233 (5th Cir. 2001),
cert. denied, 122 S.Ct. 2363 (2002). "The Second Amendment
of the Constitution, in regard to the right of the people to
bear Arms, is a limitation only on the power of Congress and
the National government." Maxwell, 176 U.S. at 597.

It is clear that the Federal government, its Congress,
is without any power to disarm American Citizens, and certainly,

at its "whim," Congress may not disarm an entire "Class" (thousands) of American Citizens.

Petitioner an American Citizen, is imprisoned by Federal government officials for no other reason than he possess a legal firearm. The Federal government and its officials are expressly deprived of the power to imprison Petitioner or any other American Citizen purely because he/she possessed a lawful firearm.

Petitioner has a right to demand that this Court protect his rights in this case. Cruikshank, 92 U.S. at 549, 551-52; Cooper v. Aaron, 358 U.S. 1, 18 (1958); Marbury v. Madison, 5 U.S. 137, 163, 177, 180 (1803); U.S. v. Lee, 106 U.S. 196, 220 (1882); Davis v. Passman, 442 U.S. 228, 241-242 (1979).

## A DECLARATORY JUDGMENT IS NOT BARRED IN THIS CASE

Seeking a declaratory judgment in this case is not barred by a favorable termination ruling because success in such a suite would not necessarily demonstrate the invalidity pf Petitioner's confinement. A separate action would be needed to over turn his conviction. See Osborne v. District Attorneys Office, 423 F.3d 1050, 1056 (9th Cir. 2005).

Dated  July 5, 2005

Respectfully sumitted,

William J.R. Embrey
Pro se Petitioner
87263-132
P.O. Box 1000
Oxford, WI 53952

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was mailed by United States Mail, to:  Stephen W. Riddell, Assistant U.S. Attorney, 555  4th Street, N.W., Room 10-911, Washington, D.C. 20530

William J.R. E,brey